Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DILLON,<br><br>        Plaintiff,<br><br>    vs.<br><br>PREMIER FINANCIAL CORP., DONALD P. HILEMAN, RICHARD J. SCHIRALDI, MARTIN E. ADAMS, ZAHID AFZAL, LOUIS M. ALTMAN, TERRI A. BETTINGER, JOHN L. BOOKMYER, LEE BURDMAN, JEAN A. HUBBARD, NIKKI LANIER, CHARLES D. NIEHAUS, MARK A. ROBISON, GARY M. SMALL, and SAMUEL S. STRAUSBAUGH,<br><br>        Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, John Dillon ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## <u>SUMMARY OF THE ACTION</u>

1.    Plaintiff brings this stockholder action against Premier Financial Corp. ("Premier or the "Company") and the Company's Board of Directors (the "Board" or the "Individual

Defendants," and together with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge the Company with WesBanco, Inc. ("WesBanco"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-stock merger transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 26, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the agreement, WesBanco will exchange shares of its common stock for all of the outstanding shares of Premier Financial common stock, in an all-stock transaction. Premier Financial shareholders will be entitled to receive 0.80 of a share of WesBanco common stock for each share of Premier Financial common stock they own upon the effective time of the merger, for aggregate merger consideration valued at approximately $959 million, or $26.66 per share, based on WesBanco's closing stock price of $33.32 as of July 24, 2024.

3.      On October 4, 2024, the Company and WesBanco caused to be filed with the SEC a Form S-4 attaching a Registration Statement ("Registration Statement").

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5.      The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus, in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Premier and WesBanco, provided by Premier management to the Company Board, the Executive Committee of the Company Board (the "Executive Committee"), the Company's financial advisor Piper Sandler & Co. ("Piper Sandler"), and WesBanco's financial advisor Raymond James & Associates, Inc. ("Raymond James"); and (c) the data and inputs underlying the fair value assessment that purport to support the financial analyses created by Piper Sandler and Raymond James, and provided to the Company, the Board, and the Executive Committee.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## **PARTIES**

7.      Plaintiff is a citizen of Ohio, and at all times relevant hereto, has been a Premier stockholder.

8.      Defendant Premier, through its subsidiaries, provides various banking services. Premier is incorporated in Ohio and has its principal place of business at 601 Clinton Street, Defiance, OH 43512. Shares of Premier common stock trade on the Nasdaq Capital Markets ("Nasdaq") under the symbol "PFC."

9.     Defendant Donald P. Hileman ("Hileman") has been the Chairman of the Company Board at all relevant times. In addition, Defendant Hileman served as a member of the Executive Committee.

10.     Defendant Richard J. Schiraldi ("Schiraldi") has been the Vice Chairman of the Company Board at all relevant times. In addition, Defendant Schiraldi served as a member of the Executive Committee.

11.     Defendant Martin E. Adams ("Adams") has been a director of the Company at all relevant times. In addition, Defendant Adams served as a member of the Executive Committee.

12.     Defendant Zahid Afzal ("Afzal") has been a director of the Company at all relevant times.

13.     Defendant Louis M. Altman ("Altman") has been a director of the Company at all relevant times.

14.     Defendant Terri A. Bettinger ("Bettinger") has been a director of the Company at all relevant times.

15.     Defendant John L. Bookmyer ("Bookmyer") has been a director of the Company at all relevant times. In addition, Defendant Bookmayer served as a member of the Executive Committee.

16.     Defendant Lee Burdman ("Burdman") has been a director of the Company at all relevant times.

17.     Defendant Jean A. Hubbard ("Hubbard") has been a director of the Company at all relevant times.

18.     Defendant Nikki Lanier ("Lanier") has been a director of the Company at all relevant times.

19.    Defendant Charles D. Niehaus ("Niehaus") has been a director of the Company at all relevant times.

20.    Defendant Mark A. Robison ("Robison") has been a director of the Company at all relevant times.

21.    Defendant Gary M. Small ("Small") has been a director of the Company at all relevant times. In addition, Defendant Small serves as the Company's President and Chief Executive Officer ("CEO"). Defendant small also served as a member of the Executive Committee.

22.    Defendant Samuel S. Strausbaugh ("Strausbaugh") has been a director of the Company at all relevant times. In addition, Defendant Strausbaugh served as a member of the Executive Committee.

23.    Defendants identified in ¶¶ 9 - 21 are collectively referred to as the "Individual Defendants."

24.    Non-Party WesBanco operates as the bank holding company for WesBanco Bank, Inc. that provides retail banking, corporate banking, personal and corporate trust, brokerage, mortgage banking, and insurance services to individuals and businesses in the United States.

## JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

26.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present

in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

28.    Defendant Premier, through its subsidiaries, provides various banking services. It offers demand, checking, money market, and savings accounts, as well as certificates of deposits and certificates of deposit account registry service; and investment products.

29.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial growth.  For example, in the April 23, 2024, press release announcing its 2024 Q1 financial results, the Company highlighted such milestones as: Deposit average balances up 2.6% annualized; Earning asset average balances up 1.0% annualized; and Non-interest income up 6.0%.

30.    Speaking on these positive results, CEO Defendant Small commented on the Company's positive financial results as follows, "Non-interest income was boosted by continued strong asset management revenue, and the residential mortgage team posted better than anticipated results."

31.    In addition, Defendant CEO Small stated, "The 'new build' housing market, a

strength for the organization, remains active and represented approximately 50% of our origination activity during the quarter. The organization's quarterly expense run rate was favorable and we anticipate continued favorable expense performance over the course of the year."

32.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Premier. Based upon these positive financial results and outlook, the Company is likely to have future success.

33.     Despite this upward trajectory, the Individual Defendants have caused Premier to enter the Proposed Transaction without providing requisite information to Company stockholders such as Plaintiff.

***The Flawed Sales Process***

34.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

35.     Notably, the Registration Statement fails to indicate why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness. For example, WesBanco stock was trading at $33.23 just prior to the announcement of the merger. Since then, WesBanco has traded as low as $28.70 and has not traded above $32.46 per share since the July announcement of the merger.

36.     The Registration Statement fails to indicate why the Board did not attempt to negotiate the exchange ratio up to the higher end of WesBanco's second indication of interest which proposed an implied exchange ratio between 0.80 to 0.83 shares of WesBanco common stock for each share of Premier common stock.

37.     The Registration Statement is silent as to the nature of the confidentiality agreement

entered into between the Company and WesBanco, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

38.    The Registration Statement fails to provide complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction, including specifically all discussions relating to the Consulting Agreement WesBanco entered into with Defendant Hileman, and Defendants Afzal, Altman, Bookmyer, and Burdman being appointed as members of WesBanco Board of Directors after the close of the Merger.

39.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

40.    On July 26, 2024, Premier and WesBanco issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> WHEELING, W. Va.--(BUSINESS WIRE)-- WesBanco, Inc. ("WesBanco") (NASDAQ: WSBC) and Premier Financial Corp. ("Premier") (NASDAQ: PFC) jointly announced today that they have executed a definitive Agreement and Plan of Merger ("Agreement") providing for the merger of Premier with and into WesBanco. Jeff Jackson, President and Chief Executive Officer of WesBanco, and Gary Small, President and Chief Executive Officer of Premier, made the joint announcement.
>
> Under the terms of the Agreement, which has been unanimously approved by the board of directors of both companies, WesBanco will exchange shares of its common stock for all of the outstanding shares of Premier common stock, in an all-stock transaction. Premier shareholders will be entitled to receive 0.80 of a share of WesBanco common stock for each share of Premier common stock they own upon the effective time of the merger, for aggregate merger consideration valued at approximately $959 million, or $26.66 per share, based on WesBanco's closing stock price of $33.32 as of July 24, 2024. The transaction values Premier at a price

to June 30, 2024 tangible book value per share of 142% and a price to mean analyst estimated 2024 earnings per share of 12.9 times. The merger is expected to qualify as a tax-free reorganization.

WesBanco also announced today that it has entered into subscription agreements with investors to raise capital to support the merger, led by a $125 million investment from Wellington Management. Additional investors include Glendon Capital Management LP and Klaros Capital. In aggregate, $200 million of WesBanco common stock will be issued. The capital raise is expected to close on August 1, 2024. The proceeds of the capital raise are expected to support the pro forma bank's balance sheet and regulatory capital ratios.

Upon completion of the merger, the shares issued to Premier shareholders are expected to comprise 30% of the outstanding shares of the combined company, the shares issued in the capital raise are expected to represent 8% of the combined company, and 62% of the outstanding shares of the combined company are expected to be held by legacy WesBanco shareholders.

Jeff Jackson, President and Chief Executive Officer of WesBanco, stated, "Today is an exciting day in WesBanco's 155-year history as we announce our proposed merger with Premier and mark another milestone in our long-term growth strategy. This transformative merger will bring together two high-caliber institutions to create a community-focused, regional financial services partner strongly positioned to serve the unique needs of both our new and legacy communities. We are pleased to welcome Premier's customers and employees to the WesBanco family and look forward to delivering exceptional customer experiences to our newest markets through a broader offering of banking and wealth management services. WesBanco has built an outstanding reputation for soundness, profitability, customer service, employer of choice and community development, as evidenced by multiple recent national accolades. We look forward to extending our legacy through this merger and bringing even greater value to our customers, teams, communities and shareholders."

With highly compatible cultures and business models, the proposed merger will create a regional financial services institution with approximately $27 billion in assets, significant economies of scale, and strong pro forma profitability metrics. With complementary and contiguous geographic footprints, the combined company would be the 8th largest bank in Ohio, based on deposit market share, have increased presence in Indiana, and serve customers in nine states.

Excluding certain merger-related charges and transaction related provision for credit losses, the transaction, with cost savings fully phased in, is anticipated to be more than 40% accretive to 2025 earnings. Estimated tangible book value dilution at closing of 13% is expected to be earned back in approximately 2.8 years, using the "cross-over" method. The merger is subject to a number of customary conditions, including the approvals of the appropriate regulatory authorities and

approvals by the shareholders of both WesBanco and Premier. It is expected that the transaction should be completed during the first quarter of 2025. Upon completion of the merger, four members of Premier's current Board of Directors will be appointed to WesBanco's Board of Directors.

"The combination of WesBanco and Premier makes for an excellent strategic fit. Both organizations value community level banking, are well aligned from a culture perspective, and are focused on performance," said Gary Small, President and Chief Executive Officer of Premier. "The expanded reach of the organization will serve as a catalyst for growth and increased investment in products and services, to the benefit of all stakeholders: customers, associates, shareholders, as well as the communities we serve."

At June 30, 2024, WesBanco had consolidated assets of approximately $18.1 billion, deposits of $13.4 billion, total loans of $12.3 billion, and shareholders' equity of $2.5 billion.

At June 30, 2024, Premier had consolidated assets of approximately $8.8 billion, deposits of $7.2 billion, total loans of $6.8 billion, and shareholders' equity of $1.0 billion.

When the transaction is consummated, WesBanco will have more than 250 financial centers, as well as loan production offices, across nine states. The transaction will expand WesBanco's franchise by 73 financial centers located primary throughout northern Ohio, as well as in southern Michigan and northeastern Indiana. Officials of both organizations are optimistic that organizing around customer services and product delivery can be accomplished with as little employee disruption as possible.

As a condition to WesBanco's willingness to enter into the Agreement, all of the directors and executive officers of Premier have entered into voting agreements with WesBanco pursuant to which they have agreed to vote their shares in favor of the merger.

### *Potential Conflicts of Interest*

41.     The breakdown of the benefits of the deal indicates that Premier insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Premier.

42.     Additionally, Company insiders currently own large amounts of Company Performance Share Units, and Time-Based Restricted Stock Units, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Executive Officer | Premier Financial Performance Share Units[1] (A) | Premier Financial Time-Based Restricted Stock[2] (B) | As-converted Aggregate Wesbanco Common Stock[3] (C) |
|---|---|---|---|
| Kathy Bushway | 3,713 | 1,195 | 3,926 |
| Varun Chandhok | 9,728 | 8,246 | 14,379 |
| Sharon L. Davis | 7,276 | 2,319 | 7,676 |
| Jason L. Gendics | 4,436 | 1,417 | 4,682 |
| Donald P. Hileman | — | 18,734 | 14,987 |
| John Houpt | 4,470 | 6,027 | 8,397 |
| Rick L. Hull | 5,520 | 1,657 | 5,741 |
| Shannon M. Kuhl | 6,005 | 4,576 | 8,464 |
| Paul D. Nungester | 11,170 | 3,575 | 11,796 |
| Dennis E. Rose, Jr. | 7,162 | 2,288 | 7,560 |
| Jennifer Scroggs | 3,475 | 1,397 | 3,897 |
| Gary M. Small | 26,622 | 16,964 | 34,868 |
| Tina M. Shaver | 4,959 | 3,521 | 6,784 |

43.     In addition, employment agreements with certain Premier executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

**Golden Parachute Compensation**

| Name | Cash[1] | Equity[2] | Perquisites/ Benefits[3] | Total |
|---|---|---|---|---|
| Gary Small | $3,210,607 | $1,136,112 | $   — | $4,346,719 |
| Paul Nungester | 1,672,296 | 388,780 | — | 2,061,075 |
| Rick Hull | 838,379 | 189,448 | 30,440 | 1,058,267 |
| Varun Chandhok | 815,899 | 466,190 | 43,366 | 1,325,455 |
| Shannon Kuhl | 643,065 | 275,081 | 12,000 | 930,146 |

44.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment, if any, which took place during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

45.     This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46.     Thus, while the Proposed Transaction is not in the best interests of Premier, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

47.     The Premier Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

48.     The Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction, as follows:

a.    Why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness. For example, WesBanco stock was trading at $33.23 just prior to the announcement of the merger. Since then, WesBanco has traded as low as $28.70 and has not traded above $32.46 per share since the July announcement of the merger;

b.    why the Board did not attempt to negotiate the exchange ratio up to the higher end of WesBanco's second indication of interest which proposed an implied exchange ratio between 0.80 to 0.83 shares of WesBanco common stock for each share of Premier common stock;

c.    Whether the confidentiality agreements entered into by the Company with WesBanco differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

d.    All specific conditions under which any standstill provision contained in any confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including WesBanco, would fall away; and

e.    Provide complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction, including specifically all discussions relating to the Consulting Agreement WesBanco entered into with Defendant Hileman, and Defendants Afzal, Altman, Bookmyer, and Burdman being appointed as members of WesBanco Board of Directors after the close of the Merger.

*Omissions and/or Material Misrepresentations Concerning Premier and WesBanco*
*Financial Projections*

49.     The Registration Statement fails to provide material information concerning financial projections for Premier and WesBanco provided by Premier and WesBanco respectively to the Board, the Executive Committee, Piper Sandler, and Raymond James and relied upon by Piper Sandler and Raymond James in their respective analyses. The Registration Statement discloses management-prepared financial projections for the Company and WesBanco which are materially misleading.

50.     Notably, the Registration Statement reveals that as part of its analysis, Piper Sandler considered, "historical financial information of Premier Financial and its banking subsidiary that Piper Sandler deemed relevant."

51.     Moreover, the Registration Statement reveals that as a part of its analysis, Raymond James considered, "certain information related to the historical financial condition and prospects of Premier Financial and WesBanco, as made available to Raymond James by or on behalf of WesBanco."

52.     The Registration Statement should have, but fails to provide, certain information in the projections that Premier management may have provided to the Board, the Executive Committee, Piper Sandler, and Raymond James.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

53.     With regard to the *Premier Financial Prospective Financial Information* provided by Premier Management, the Registration Statement fails to disclose material line items for the following metrics:

    a.  Net Income ($000s), including the underlying inputs, metrics, and assumptions used to determine same;

    b.  Earnings Per Share, including the underlying inputs, metrics, and assumptions used to determine same;

    c.  Estimated Annual earnings growth rate, including the underlying inputs, metrics, and assumptions used to determine same; and

    d.  Estimated Annual Dividends Per Share, including the underlying inputs, metrics, and assumptions used to determine same.

54.     With regard to the *WesBanco Financial Prospective Financial Information* provided by WesBanco Management, the Registration Statement fails to disclose material line items for the following metrics:

    a.  Net Income ($000s), including the underlying inputs, metrics, and assumptions used to determine same;

    b.  Earnings Per Share, including the underlying inputs, metrics, and assumptions used to determine same;

    c.  Estimated Annual earnings growth rate, including the underlying inputs, metrics, and assumptions used to determine same; and

    d.  Estimated Annual Dividends Per Share, including the underlying inputs, metrics, and assumptions used to determine same.

55. This information is necessary to provide the Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

56. Without accurate projection data for Premier, WesBanco, and the Combined Company being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the exchange ratio, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analysis by Piper Sandler*

57. In the Registration Statement, Piper Sandler describes its financial analysis and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the financial analysis.

58. With respect to the *Comparable Company Analyses*, the Registration Statement fails to disclose:

    a. Regarding the *Premier Financial Comparable Company Analysis*, the Registration Statement fails to disclose:

        i. The Enterprise Value ("EV") for each of the selected Comparable Companies analyzed;

ii. The inputs, metrics, and assumptions used to determine the Total Assets ($mm) for Premier;

iii. The inputs, metrics, and assumptions used to determine the Totals Assets ($mm) Peer Group Median, Mean, Low, and High utilized;

iv. The inputs, metrics, and assumptions used to determine the Loans/ Deposits (%) for Premier;

v. The inputs, metrics, and assumptions used to determine the Loans/ Deposits (%) Peer Group Median, Mean, Low, and High utilized;

vi. The inputs, metrics, and assumptions used to determine the Non-performing assets/ Total Assets (%) for Premier;

vii. The inputs, metrics, and assumptions used to determine the Non-performing assets/ Total Assets (%) Peer Group Median, Mean, Low, and High utilized;

viii. The inputs, metrics, and assumptions used to determine the Tangible Common Equity/ Tangible Assets for Premier;

ix. The inputs, metrics, and assumptions used to determine the Tangible Common Equity/ Tangible Assets Peer Group Median, Mean, Low, and High utilized;

x. The inputs, metrics, and assumptions used to determine the Tier 1 Leverage Ratio (%) for Premier;

xi. The inputs, metrics, and assumptions used to determine the Tier 1 Leverage Ratio (%) Peer Group Median, Mean, Low, and High utilized;

xii.   The inputs, metrics, and assumptions used to determine the Total RBC Ratio (%) for Premier;

xiii.   The inputs, metrics, and assumptions used to determine the Total RBC Ratio (%) Peer Group Median, Mean, Low, and High utilized;

xiv.   The inputs, metrics, and assumptions used to determine the CRE/ Total RBC Ratio (%) for Premier;

xv.   The inputs, metrics, and assumptions used to determine the CRE/ Total RBC Ratio (%) Peer Group Median, Mean, Low, and High utilized;

xvi.   The inputs, metrics, and assumptions used to determine the LTM Return on Average Assets (%) for Premier;

xvii.   The inputs, metrics, and assumptions used to determine the LTM Return on Average Assets (%) Peer Group Median, Mean, Low, and High utilized;

xviii.   The inputs, metrics, and assumptions used to determine the LTM Return on average tangible common equity (%) for Premier;

xix.   The inputs, metrics, and assumptions used to determine the LTM Return on average tangible common equity (%) Peer Group Median, Mean, Low, and High utilized;

xx.   The inputs, metrics, and assumptions used to determine the LTM Net interest margin (%) for Premier;

xxi.   The inputs, metrics, and assumptions used to determine the LTM Net interest margin (%) Peer Group Median, Mean, Low, and High utilized;

xxii.   The inputs, metrics, and assumptions used to determine the LTM Efficiency ratio (%) for Premier;

xxiii.  The inputs, metrics, and assumptions used to determine the LTM Efficiency ratio (%) Peer Group Median, Mean, Low, and High utilized;

xxiv.   The inputs, metrics, and assumptions used to determine the Price/ Tangible Book Value (%) for Premier;

xxv.    The inputs, metrics, and assumptions used to determine the Price/ Tangible Book Value (%) Peer Group Median, Mean, Low, and High utilized;

xxvi.   The inputs, metrics, and assumptions used to determine the Price/ LTM Earnings per share (%) for Premier;

xxvii.  The inputs, metrics, and assumptions used to determine the Price/ LTM Earnings per share (%) Peer Group Median, Mean, Low, and High utilized;

xxviii. The inputs, metrics, and assumptions used to determine the Price/ 2025 Estimated Earnings per share (%) for Premier;

xxix.   The inputs, metrics, and assumptions used to determine the Price/ 2025 Estimated Earnings per share (%) Peer Group Median, Mean, Low, and High utilized;

xxx.    The inputs, metrics, and assumptions used to determine the Current Dividend Yield (%) for Premier;

xxxi.   The inputs, metrics, and assumptions used to determine the Current Dividend Yield (%) Peer Group Median, Mean, Low, and High utilized;

xxxii.   The inputs, metrics, and assumptions used to determine the Market Value ($mm) for Premier; and

xxxiii.   The inputs, metrics, and assumptions used to determine the Market Value ($mm) Peer Group Median, Mean, Low, and High utilized.

b.   Regarding the *WesBanco Financial Comparable Company Analysis*, the Registration Statement fails to disclose:

i.   The Enterprise Value ("EV") for each of the selected Comparable Companies analyzed;

ii.   The inputs, metrics, and assumptions used to determine the Total Assets ($mm) for WesBanco;

iii.   The inputs, metrics, and assumptions used to determine the Totals Assets ($mm) Peer Group Median, Mean, Low, and High utilized;

iv.   The inputs, metrics, and assumptions used to determine the Loans/ Deposits (%) for WesBanco;

v.   The inputs, metrics, and assumptions used to determine the Loans/ Deposits (%) Peer Group Median, Mean, Low, and High utilized;

vi.   The inputs, metrics, and assumptions used to determine the Non-performing assets/ Total Assets (%) for WesBanco;

vii.   The inputs, metrics, and assumptions used to determine the Non-performing assets/ Total Assets (%) Peer Group Median, Mean, Low, and High utilized;

viii.   The inputs, metrics, and assumptions used to determine the Tangible Common Equity/ Tangible Assets for WesBanco;

ix.  The inputs, metrics, and assumptions used to determine the Tangible Common Equity/ Tangible Assets Peer Group Median, Mean, Low, and High utilized;

x.  The inputs, metrics, and assumptions used to determine the Tier 1 Leverage Ratio (%) for WesBanco;

xi.  The inputs, metrics, and assumptions used to determine the Tier 1 Leverage Ratio (%) Peer Group Median, Mean, Low, and High utilized;

xii.  The inputs, metrics, and assumptions used to determine the Total RBC Ratio (%) for WesBanco;

xiii.  The inputs, metrics, and assumptions used to determine the Total RBC Ratio (%) Peer Group Median, Mean, Low, and High utilized;

xiv.  The inputs, metrics, and assumptions used to determine the CRE/ Total RBC Ratio (%) for WesBanco;

xv.  The inputs, metrics, and assumptions used to determine the CRE/ Total RBC Ratio (%) Peer Group Median, Mean, Low, and High utilized;

xvi.  The inputs, metrics, and assumptions used to determine the LTM Return on Average Assets (%) for WesBanco;

xvii.  The inputs, metrics, and assumptions used to determine the LTM Return on Average Assets (%) Peer Group Median, Mean, Low, and High utilized;

xviii.  The inputs, metrics, and assumptions used to determine the LTM Return on average tangible common equity (%) for WesBanco;

xix.  The inputs, metrics, and assumptions used to determine the LTM Return on average tangible common equity (%) Peer Group Median, Mean, Low, and High utilized;

xx.  The inputs, metrics, and assumptions used to determine the LTM Net interest margin (%) for WesBanco;

xxi.  The inputs, metrics, and assumptions used to determine the LTM Net interest margin (%) Peer Group Median, Mean, Low, and High utilized;

xxii.  The inputs, metrics, and assumptions used to determine the LTM Efficiency ratio (%) for WesBanco;

xxiii.  The inputs, metrics, and assumptions used to determine the LTM Efficiency ratio (%) Peer Group Median, Mean, Low, and High utilized;

xxiv.  The inputs, metrics, and assumptions used to determine the Price/ Tangible Book Value (%) for WesBanco;

xxv.  The inputs, metrics, and assumptions used to determine the Price/ Tangible Book Value (%) Peer Group Median, Mean, Low, and High utilized;

xxvi.  The inputs, metrics, and assumptions used to determine the Price/ LTM Earnings per share (%) for WesBanco;

xxvii.  The inputs, metrics, and assumptions used to determine the Price/ LTM Earnings per share (%) Peer Group Median, Mean, Low, and High utilized;

xxviii.  The inputs, metrics, and assumptions used to determine the Price/ 2025 Estimated Earnings per share (%) for WesBanco;

xxix. The inputs, metrics, and assumptions used to determine the Price/ 2025 Estimated Earnings per share (%) Peer Group Median, Mean, Low, and High utilized;

xxx. The inputs, metrics, and assumptions used to determine the Current Dividend Yield (%) for WesBanco;

xxxi. The inputs, metrics, and assumptions used to determine the Current Dividend Yield (%) Peer Group Median, Mean, Low, and High utilized;

xxxii. The inputs, metrics, and assumptions used to determine the Market Value ($mm) for WesBanco; and

xxxiii. The inputs, metrics, and assumptions used to determine the Market Value ($mm) Peer Group Median, Mean, Low, and High utilized.

59. With respect to the *Analysis of Precedent Transactions*, the Registration Statement fails to disclose:

    a. Relating to the *Premier Analysis of Precedent Transactions*, the Registration Statement fails to disclose:

        i. The aggregate value of each of the selected precedent transactions analyzed;

        ii. The date of which each selected precedent transaction closed;

        iii. The inputs, metrics, and assumptions used to determine the Transaction Price/ LTM Earnings Per Share (x) for Premier;

        iv. The inputs, metrics, and assumptions used to determine the Transaction Price/ LTM Earnings Per Share (x) Median, Mean, Low, and High for the Nationwide Precedent Transactions utilized;

    v.  The inputs, metrics, and assumptions used to determine the Transaction Price/ Estimated Earnings Per Share (x) for Premier;

    vi.  The inputs, metrics, and assumptions used to determine the Transaction Price/ Estimated Earnings Per Share (x) Median, Mean, Low, and High for the Nationwide Precedent Transactions utilized;

    vii.  The inputs, metrics, and assumptions used to determine the Transaction Price/ Tangible Book Value Per Share (%) for Premier;

    viii.  The inputs, metrics, and assumptions used to determine the Transaction Price/ Tangible Book Value Per Share (%) Median, Mean, Low, and High for the Nationwide Precedent Transactions utilized;

    ix.  The inputs, metrics, and assumptions used to determine the Tangible Book Value Premium to Core Deposits (%) for Premier;

    x.  The inputs, metrics, and assumptions used to determine the Tangible Book Value Premium to Core Deposits (%) Median, Mean, Low, and High for the Nationwide Precedent Transactions utilized;

    xi.  The inputs, metrics, and assumptions used to determine the 1-day Market Premium (%) for Premier; and

    xii.  The inputs, metrics, and assumptions used to determine the 1-day Market Premium (%) Median, Mean, Low, and High for the Nationwide Precedent Transactions utilized.

b.  Relating to the *WesBanco Analysis of Precedent Transactions*, the Registration Statement fails to disclose:

    i.  The aggregate value of each of the selected precedent transactions

analyzed;

ii. The date of which each selected precedent transaction closed;

iii. The inputs, metrics, and assumptions used to determine the Transaction Price/ LTM Earnings Per Share (x) for WesBanco;

iv. The inputs, metrics, and assumptions used to determine the Transaction Price/ LTM Earnings Per Share (x) Median, Mean, Low, and High for the Nationwide Precedent Transactions utilized;

v. The inputs, metrics, and assumptions used to determine the Transaction Price/ Estimated Earnings Per Share (x) for WesBanco;

vi. The inputs, metrics, and assumptions used to determine the Transaction Price/ Estimated Earnings Per Share (x) Median, Mean, Low, and High for the Nationwide Precedent Transactions utilized;

vii. The inputs, metrics, and assumptions used to determine the Transaction Price/ Tangible Book Value Per Share (%) for WesBanco;

viii. The inputs, metrics, and assumptions used to determine the Transaction Price/ Tangible Book Value Per Share (%) Median, Mean, Low, and High for the Nationwide Precedent Transactions utilized;

ix. The inputs, metrics, and assumptions used to determine the Tangible Book Value Premium to Core Deposits (%) for WesBanco;

x. The inputs, metrics, and assumptions used to determine the Tangible Book Value Premium to Core Deposits (%) Median, Mean, Low, and High for the Nationwide Precedent Transactions utilized;

xi. The inputs, metrics, and assumptions used to determine the 1-day

Market Premium (%) for WesBanco; and

    xii.  The inputs, metrics, and assumptions used to determine the 1-day Market Premium (%) Median, Mean, Low, and High for the Nationwide Precedent Transactions utilized.

60.    With respect to the *Net Present Value Analyses*, the Registration Statement fails to disclose:

    a.  Relating to the *Premier Net Present Value Analysis*, the Registration Statement fails to disclose:

        i.  The inputs, metrics, and assumptions used to determine the Price to 2028 earnings multiples ranging from 9.0x to 13.0x utilized;

        ii.  The inputs, metrics, and assumptions used to determine the December 31, 2028, tangible book value multiples ranging from 115% to 215%; and

        iii.  The inputs, metrics, and assumptions used to determine the discount rates ranging from 8.0% to 12.0% utilized.

    b.  Relating to the *WesBanco Net Present Value Analysis*, the Registration Statement fails to disclose:

        i.  The inputs, metrics, and assumptions used to determine the Price to 2028 earnings multiples ranging from 9.0x to 14.0x utilized;

        ii.  The inputs, metrics, and assumptions used to determine the December 31, 2028, tangible book value multiples ranging from 115% to 215%; and

iii.  The inputs, metrics, and assumptions used to determine the discount

rates ranging from 8.0% to 12.0% utilized.

61.    These disclosures are critical for Plaintiff to be able to make an informed decision

on whether to vote in favor of the Proposed Transaction.

62.    Without the omitted information identified above, Plaintiff is missing critical

information necessary to evaluate whether the proposed consideration truly maximizes his value

and serves his interest as a stockholder. Moreover, without the key financial information and

related disclosures, Plaintiff cannot gauge the reliability of the financial analysis and the Board's

determination that the Proposed Transaction is in his best interests as a public Premier stockholder.

As such, the Board has violated the Exchange Act by failing to include such information in the

Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analysis by Raymond James*

63.    In the Registration Statement, Raymond James describes its financial analysis, and

the various financial analyses performed to render such opinion.  However, the descriptions fail to

include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the

valuations, or evaluate the financial analysis.

64.    With respect to the *Discounted Future Cash Flow Analysis*, the Registration

Statement fails to disclose:

a.  Relating to the *Premier Discounted Cash Flow Analysis*, the Registration

Statement fails to disclose:

i.  The inputs, metrics, and assumptions used to determine the forward

        multiples range of 10.0x to 13.0 x utilized;

    ii.   The inputs, metrics, and assumptions used to determine the discount rates range of 9% to 13% utilized;

    iii.   The range of terminal values for Premier calculated; and

    iv.   Premier's average weighted cost of capital utilized.

b.   Relating to the *WesBanco Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

    i.   The inputs, metrics, and assumptions used to determine the forward multiples range of 12.0x to 15.0 x utilized;

    ii.   The inputs, metrics, and assumptions used to determine the discount rates range of 9% to 13% utilized;

    iii.   The range of terminal values for WesBanco calculated; and

    iv.   WesBanco's average weighted cost of capital utilized.

65.    With respect to the *Selected Companies Analysis*, the Registration Statement fails to disclose:

a.   Relating to the *Premier Selected Companies Analysis*, the Registration Statement fails to disclose:

    i.   The EV for the selected companies analyzed;

    ii.   The inputs, metrics, and assumptions used to determine the Price/ LTM Core EPS multiples for the selected companies utilized;

    iii.   The inputs, metrics, and assumptions used to determine the Price/ TBVPS multiples for the selected companies utilized;

    iv.   The inputs, metrics, and assumptions used to determine the Price/ 2024E

EPS multiples for the selected companies utilized; and

    v.   The inputs, metrics, and assumptions used to determine the Price/ 2025E EPS multiples for the selected companies utilized.

b.   Relating to the *WesBanco Selected Companies Analysis*, the Registration Statement fails to disclose:

    i.   The EV for the selected companies analyzed;

    ii.   The inputs, metrics, and assumptions used to determine the Price/ LTM Core EPS multiples for the selected companies utilized;

    iii.   The inputs, metrics, and assumptions used to determine the Price/ TBVPS multiples for the selected companies utilized;

    iv.   The inputs, metrics, and assumptions used to determine the Price/ 2024E EPS multiples for the selected companies utilized; and

    v.   The inputs, metrics, and assumptions used to determine the Price/ 2025E EPS multiples for the selected companies utilized.

66.   With respect to the *Selected Transactions Analysis,* the Registration Statement fails to disclose:

a.   The date of which each of the selected transactions closed;

b.   The inputs, metrics and assumptions used to determine the DV/ TBV for the selected transactions utilized;

c.   The inputs, metrics and assumptions used to determine the DV/ LTM Net Income for the selected transactions utilized; and

d.   The inputs, metrics and assumptions used to determine the Core Deposit Premium for the selected transactions utilized.

67. With respect to the *Discounted Cash Flow Analysis with Merger Adjustments*, the Registration Statement fails to disclose:

a. The inputs, metrics, and assumptions used to determine the forward multiples range of 10.0x to 13.0 x utilized;

b. The inputs, metrics, and assumptions used to determine the discount rates range of 9% to 13% utilized;

c. The range of terminal values for Premier calculated; and

d. Premier's average weighted cost of capital utilized.

68. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

69. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the financial analysis and the Board's determination that the Proposed Transaction is in his best interests as a public Premier stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### <u>(Against All Defendants)</u>

70. Plaintiff repeats all previous allegations as if set forth in full herein.

71. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

72.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

73.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

74.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

75.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

76.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

77.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

78.     Plaintiff repeats all previous allegations as if set forth in full herein.

79.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

80.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

81.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Premier's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

82.     The Individual Defendants acted as controlling persons of Premier within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Premier to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Premier and all of its employees.  As alleged above, Premier is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained

therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: October 16, 2024                                  **BRODSKY & SMITH**

By: *Evan J. Smith*
          Evan J. Smith
          240 Mineola Boulevard
          Mineola, NY 11501
          Phone: (516) 741-4977
          Facsimile (561) 741-0626

          *Counsel for Plaintiff*